IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| ZHEJIANG MATRIX SCM CO., LTD, <br> *Plaintiff,* | : <br> : <br> : |
| v. | :    CIVIL NO. 23-0979 <br> : |
| PNC BANK, NATIONAL ASSOCIATION, <br> *Defendant.* | : <br> : <br> : |

## MEMORANDUM

**Scott, J.**                                                                                              **March 13, 2024**

      Plaintiff Zhejiang Matrix SCM Co., LTD ("Plaintiff") brings this negligence action against Defendant PNC Bank, National Association ("Defendant") alleging that Defendant is liable for its role in a fraudulent wire transfer transaction perpetrated by a non-party against Plaintiff. Currently pending before the Court is Defendant's Motion to Dismiss (ECF No. 6), which has been fully briefed. ECF Nos. 15, 16, 21. For the reasons set forth below, the Court will grant Defendant's Motion and dismiss Plaintiff's Complaint. An appropriate Order will follow.

**I.  FACTUAL BACKGROUND**

      Plaintiff is a supply chain management company located in China, which conducted business with Matrix Freight Solutions Inc. ("Matrix"), a company located in California. ECF No. 1, Ex. A, Compl. ¶ 5. In or about April 2022, after Plaintiff and Matrix exchanged numerous emails regarding their payments and wiring instructions, an "unidentified third party ('Hacker') hacked into Matrix's email to send Plaintiff an email with new wiring instructions." *Id.* ¶¶ 6–7. The new wiring instructions specified the recipient as Matrix but contained a different account number. *Id.* ¶ 8. Upon receipt of these new instructions, Plaintiff "unknowingly wired the $296,985.32, through Bank of China, to the hacker's PNC account on or about April 12, 2022." *Id.* ¶ 9. According to Plaintiff, "[a]lthough the wire instructions identified Matrix as the holder of the beneficiary

1

account, [Defendant] accepted the funds despite knowledge that the actual account holder of the identified account did not match" and "recklessly and/or negligently permitted the release of the $296,985.32 into the hacker's PNC account without confirming with the remitter, i.e. Plaintiff, that the account was correct." *Id.* ¶¶ 9–10.

After learning of the mistake, Plaintiff, in or about May 2022, sent Defendant "demands and requests pertaining to the refund of $296,985.32, but [Defendant] failed and refused to respond." *Id.* ¶ 11. Plaintiff brings this action seeking to recover the amount wired to the fraudster, i.e., $296,985.32, from Defendant based on theories that (1) Defendant "knew, or should have known, that the wire came from Bank of China to the fraudulent PNC account," and (2) Defendant failed to "timely freeze the identified funds." *Id.* ¶ 17.

## II.  PROCEDURAL HISTORY

On February 7, 2023, Plaintiff filed its Complaint in the Court of Common Pleas of Philadelphia County. *See generally* Compl. The Complaint includes one cause of action for negligence. *See id.* ¶¶ 16–21. On March 14, 2023, Defendant removed this action to this Court. ECF No. 1. Thereafter, on March 21, 2023, Defendant filed a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 6. On April 17, 2023, Plaintiff filed a Response in Opposition to Defendant's Motion. ECF No. 15. On April 25, 2023, Defendant filed a Reply in Support of its Motion to Dismiss (ECF No. 16), and on June 2, 2023, Plaintiff filed a Sur-Reply in Opposition to Defendant's Motion to Dismiss. ECF No. 21. Accordingly, this Motion has been fully briefed and is ripe for resolution.

## III.  STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Plausibility

2

means 'more than a sheer possibility that a defendant has acted unlawfully.'" *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In considering a motion to dismiss under Rule 12(b)(6), all well-pleaded allegations in the complaint are accepted as true and interpreted in the light most favorable to the plaintiff, and all inferences are drawn in the plaintiff's favor. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1408 (3d Cir. 1991)).

## IV. DISCUSSION

In its Motion to Dismiss, Defendant argues that Plaintiff's Complaint must be dismissed because Plaintiff's negligence claim, insofar as it concerns Defendant's handling of the wire-transfer order, is preempted by Article 4A of the Pennsylvania Uniform Commercial Code, and even if Article 4A does not preempt Plaintiff's negligence claim, Plaintiff has failed to allege Defendant owed a duty of care to Plaintiff, as a non-customer. *See generally* ECF No. 6. Additionally, Defendant argues that insofar as Plaintiff's negligence claim is based on Defendant's failure to freeze the funds, Plaintiff failed to comply with Section 606 of the Pennsylvania Banking Code. *Id.*

### A. Article 4A

Article 4A of the Pennsylvania Uniform Commercial Code ("UCC") governs electronic funds transfers. 13 Pa. C.S. § 4A101 *et seq.* Article 4A defines the term "Funds Transfer" as:

> the series of transactions, beginning with the originator's payment
> order, made for the purpose of making payment to the beneficiary

>of the order. The term includes any payment order issued by the originator's bank or an intermediary bank intended to carry out the originator's payment order. A funds transfer is completed by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order.

13 Pa. C.S. § 4A104. Wire transfers fall within this definition. *See Binns v. Truist Bank*, 803 F. App'x 618, 622 n.2 (3d Cir. 2020) ("Article 4A covers credit wire transfers."); *Fragale v. Wells Fargo Bank, N.A.*, 480 F. Supp. 3d 653, 659 (E.D. Pa. 2020) ("Article 4A, which applies generally to wire transfers, . . . is a comprehensive scheme enacted to govern electronic wire transfers." (citation omitted)). Article 4A "will displace the common law" where (1) it supplies "a comprehensive remedial scheme," and (2) "reliance on the common law would undermine the purposes of the" UCC. *Bucci v. Wachovia Bank, N.A.*, 591 F. Supp. 2d 773, 779 (E.D. Pa. 2008) (citations omitted).

In this suit, Plaintiff is attempting to hold Defendant liable for the fraudulent wire transfer itself. This is evidenced by the fact that Plaintiff's Complaint asserts that Defendant accepted the funds even though the wire instructions identified Matrix as the holder of the beneficiary account and "the actual account holder of the identified account did not match." Compl. ¶ 9. This is further demonstrated by the fact that the damages being claimed is the total amount sent via wire transfer.

Section 207(b) of Article 4A sets forth specific obligations and liabilities of a beneficiary's bank that receives a payment order (e.g., a wire transfer order) in which the stated "name and [account] number refer to different persons." 13 Pa. C.S. § 4A207(b)(1). This provision specifically provides a comprehensive remedial scheme addressing Plaintiff's common law claim. Other courts have reached similar holdings. *See Remtek Servs. v. Wells Fargo Bank, N.A.*, No. 19-12790, 2020 WL 241332, at *3 (D.N.J. Jan. 16, 2020) (interpreting New Jersey's UCC provision as preempting common law negligence claim "where the bank processed a payment order despite the existence of a discrepancy between the beneficiary identified on the payment order and the

4

name on the account identified by the provided account number"); *DeFazio v. Wells Fargo Bank Nat'l Ass'n*, No. 20-cv-375, 2020 WL 1888252, at *3 (D.N.J. Apr. 16, 2020) (interpreting New Jersey's UCC provision as preempting plaintiff's claim that defendant acted with negligence in accepting the funds erroneously transferred and in transferring the funds out of the account); *Lucky Star Enterprises III, LLC v. Wells Fargo Bank, N.A.*, 585 F. Supp. 3d 1297, 1304 (W.D. Wash. 2022) (interpreting Pennsylvania's UCC provision as preempting plaintiff's claim that defendant acted negligently when it deposited the transferred funds into a Wells Fargo account and permitted those funds to be withdrawn when it had "actual and direct knowledge" that the name on the account did not match plaintiff's recipient).

Here, Plaintiff's sole argument as to this preemption issue is that Defendant has not cited any binding precedent that Article 4A of the UCC governs wire transfers. ECF No. 15 at 5; ECF No. 21 at 3. But this argument ignores the plain language of Article 4A and the ample authority in this jurisdiction confirming that Article 4A applies to wire transfers. *See* 13 Pa. C.S. § 4A104 (defining "Funds Transfer," stated *supra*); UCC § 4A-104, cmt. 6 ("Most payments covered by Article 4A are commonly referred to as wire transfers and usually involve some kind of electronic transmission."); *Binns*, 803 F. App'x at 622 n.2 (recognizing "Article 4A covers credit wire transfers"); *Shooter Pops LLC v. Wells Fargo Bank, N.A.*, 649 F. Supp. 3d 62, 66 (E.D. Pa. 2023) ("Article 4A of the UCC applies to claims arising out of wire transfers").

Accordingly, the Court finds that Plaintiff's negligence claim, insofar as it concerns the wire transfer itself, is preempted by Article 4A, and therefore, it will be dismissed with prejudice.

### B.      Pennsylvania Banking Code

Defendant also argues that, insofar as Plaintiff is attempting to hold Defendant liable for "failing" to freeze the subject funds, i.e., allegations of "post transfer conduct," such claims are barred by Section 606 of the Pennsylvania Banking Code.

This statute provides in relevant part:

> (a) An institution shall not be required, in the absence of a court order or indemnity required by this section, to recognize any claim to, or any claim of authority to exercise control over, a deposit account [...] made by a person or persons other than: (i) the customer in whose name the account or property is held by the institution, or (ii) an individual or group of individuals who are authorized to draw on or control the account or property pursuant to a certified corporate resolution or other written arrangement with the customer, currently on file with the institution [...] (b) To require an institution to recognize an adverse claim to, or adverse claim of authority to control, a deposit account [...] **whoever makes the claim must either**: (i) **obtain and serve on the institution an appropriate order directed to the institution by a court restraining any action with respect to the account or property** [...] or (ii) **deliver to the institution a bond**, in form and amount and with sureties satisfactory to the institution, indemnifying the institution against any liability, loss or expense which it might incur because of its recognition of the adverse claim or because of its refusal by reason of such claim to honor any check or other order of, or to deliver any property to, anyone described in clauses (i) and (ii) of subsection (a)[.]

7 P.S. § 606 (a)–(b) (emphasis added). Here, Plaintiff did not obtain a court order or provide the indemnification required by Pennsylvania law, and thus, Plaintiff failed to comply with Section 606. Accordingly, Plaintiff cannot hold Defendant liable for failing to freeze the subject funds after Plaintiff claimed a right to them. *See Shooter Pops, LLC*, 649 F. Supp. 3d at 67–68 ("The Court agrees with [defendant bank] that Section 606 requires a party to obtain and serve on the bank a court order instructing the bank to freeze the funds and mandating that the funds be treated as within the control of the third party instead of the account holder."); *Chemalloy Co., LLC v.*

*Citibank, N.A.*, 609 F. Supp. 3d 370, 375–76 (E.D. Pa. 2022) (explaining plaintiff "misunderstands that the Pennsylvania Banking Code prevents [defendant bank] from being held liable for its inaction. Because [plaintiff] did not satisfy the statutory requirements to mandate [defendant bank's] response to its fraud claim, it cannot now hold [defendant bank] liable for allegedly failing to respond"). Accordingly, any negligence claim based on Defendant's failure to "timely freeze the identified funds" is dismissed.

### C.   Amendment to the Complaint Would be Futile

The majority of Plaintiff's Opposition and its Sur-reply puts forth arguments in support of it being permitted to amend its Complaint. However, the Court finds that any amendment to plead a claim under Article 4A or allege additional facts in support of a negligence claim would be futile.

First, any Article 4A claim would necessarily fail because Plaintiff lacks privity with Defendant. Although this Court has not found any precedent from the Third Circuit or the Pennsylvania Supreme Court analyzing whether Section 4A incorporates a privity requirement, this Court finds persuasive the reasoning of other courts which have found a privity requirement exists. *See Grain Traders v. Citibank, N.A.*, 160 F.3d 97, 102 (2d Cir. 1998) (holding that a party may only sue the bank with which it directly dealt because "[t]o allow a party to, in effect, skip over the bank with which it dealt directly, and go to the next bank in the chain would result in uncertainty as to rights and liabilities, would create a risk of multiple or inconsistent liabilities, and would require intermediary banks to investigate the financial circumstances and various legal relations of the other parties to the transfer"); *see also Scura, Wigfield, Heyer, Stevens & Cammarota, LLP v. Citibank, NA*, No. 2:21-cv-12835, 2022 WL 16706948, at *3–6 (D.N.J. Oct. 3, 2022); *Approved Mortg. Corp. v. Truist Bank*, 638 F. Supp. 3d 941, 949–51 (S.D. Ind. 2022); *Wellton Int'l Express v. Bank of China (Hong Kong)*, 612 F. Supp. 3d 358, 364 (S.D.N.Y. 2020).

Because Plaintiff is neither a customer of Defendant nor in privity with Defendant, the Court finds any claim under Section 4A-207(b) against Defendant would necessarily fail.

Second, the Court finds that any re-fashioned negligence claim would necessarily fail to state a claim. Under Pennsylvania law, "[i]t is axiomatic that in order to maintain a negligence action, the plaintiff must show that the defendant had a duty to conform to a certain standard of conduct; that the defendant breached that duty; that such breach caused the injury in question; and actual loss or damage." *Shooter Pops LLC*, 649 F. Supp. 3d at 68 (citations omitted). "[D]ecisions across the country, including within Pennsylvania, have held that banks do not owe a duty of care to noncustomers and/or third parties." *Fragale*, 480 F. Supp. 3d at 662 (citations omitted). Additionally, courts considering the same basic fact pattern have found that the *Althaus ex rel. Althaus v. Cohen* factors weigh against finding a previously unrecognized duty, as would be the case here. *See, e.g., Shooter Pops LLC*, 649 F. Supp. 3d at 69–70; *Chemalloy Co., LLC*, 609 F. Supp. 3d at 377–79; *Fragale*, 480 F. Supp. 3d at 664–69. Without a duty of care to Plaintiff, Defendant cannot be held liable under a negligence theory.

Therefore, the Court will not grant leave to amend.

## V. CONCLUSION

For the foregoing reasons, this Court will grant Defendant's Motion to Dismiss (ECF No. 6) and dismiss this case with prejudice. An appropriate Order will follow.

BY THE COURT:

_____
HON. KAI N. SCOTT
United States District Court Judge